NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                 :
LARRY DALE JOHNSON,              :        Civil No.  12-2544 (RMB)
                                 :
          Petitioner,            :
                                 :
     v.                          :        OPINION
                                 :
DONNA ZICKEFOOSE, WARDEN,        :
                                 :
          Respondent.            :
_____:
```

APPEARANCES:

      LARRY DALE JOHNSON, Petitioner pro se
      #65400-065
      FCI Fort Dix
      P.O. Box 2000
      Fort Dix, New Jersey 08640

BUMB, District Judge

      Petitioner, Larry Dale Johnson ("Johnson"), is a federal inmate, who was confined at the FCI Fort Dix in Fort Dix, New Jersey, at the time he filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  In his petition, Johnson appears to challenge unspecified prison disciplinary actions that resulted in the loss of good conduct time.  He further seeks his transfer to a designated medical facility or Residential Reentry Center ("RRC") for care and treatment of his serious medical needs and disabilities, pursuant to the Second Chance Act.  This action also raises claims that relate to the conditions of his confinement, such as denial of medical care, interference with

his legal mail, among other claims, which were raised by Johnson
in an earlier action that was administratively terminated,
Johnson v. Zickefoose, et al., Civil No. 11-6754 (RMB).  The
instant pleading adds numerous allegations and claims regarding
the conditions of Johnson's confinement that appear to be related
to Johnson's earlier action.  Johnson brings this action as a
petition seeking habeas relief under 28 U.S.C. § 2241, against
the named respondent/defendant, Donna Zickefoose, Warden at FCI
Fort Dix, where Johnson is confined.

     For the reasons set forth below, this Court will dismiss
without prejudice Johnson's non-habeas claims related to the
conditions of his confinement.  The remaining claims for relief
under § 2241 will be allowed to proceed at this time.

## I.  BACKGROUND

     The following factual allegations are taken from the
petition and are accepted for purposes of this screening only.
The Court has made no findings as to the veracity of Johnson's
allegations.

     In Ground One of the petition, Johnson asserts violations of
the following federal laws: 5 U.S.C. § 706; 15 U.S.C. § 287; 18
U.S.C. § 1001; the Social Security Act; the Administrative
Procedures Act; the Americans with Disabilities Act; the
Rehabilitation Act; the Prison Litigation Reform Act; the Freedom
of Information Act; the Privacy Act; the Second Chance Act; the

United States Postal Service laws; the Prison Rape Elimination Act; the U.S. Tort Claims Act; the United States Constitution and its amendments; and various laws and regulations of the Federal Bureau of Prisons ("BOP"). (Petition, ¶ 7(a) Ground One). Johnson generally alleges that the Federal Bureau of Prisons ("BOP") has been deliberately indifferent to Johnson's serious medical needs by interference, delay and denial of pre-incarceration prescribed medical treatment. He further alleges that he has been designated to three different correctional institutions within one year "for retaliatory reasons when [he] filed numerous grievances." (Id.). Johnson requests that his entire BOP prison disciplinary record be expunged and his minimum custody status level be reinstated. He claims that he has administratively exhausted this claim, and notes that this grievance did not originate with Warden Zickefoose or her staff at FCI Fort Dix, where Johnson is presently confined. (Id.). Johnson also asks that all correspondence form the courts or the Attorney General's Office be designated as "special mail - open only in presence of inmate" so as to ensure postal delivery to Johnson. (Id.). The Court observes that these allegations have been raised in Johnson's earlier-filed action, Johnson v. Zickefoose, et al., Civil No. 11-6754 (RMB).

In Ground Two, Johnson reiterates a claim of improper or inadequate medical care based on allegedly predetermined denials

3

of medical treatment.  Johnson further alleges that "[i]n the
last year to avoid medical treatment for [his] ongoing medical
needs, [Johnson has] been administratively segregated, in
retaliatory transit without proper medical clearance, indigent
without access to the courts, in poor health, confined in a
wheelchair, and designated to three separate federal institutions
and numerous detention facilities in retaliation for exercising
[his] constitutional rights, and now awaits a fourth transfer."
(Pet., ¶ 7(b), Ground Two).

    In Ground Three, Johnson asserts security/custody
classification violations that allegedly constitute retaliation,
denial of due process and double jeopardy.  (Pet., ¶ 7(c), Ground
Three).  Johnson alleges that he was transferred to three
separate prisons in retaliation for his filing of over 50
grievances that were not fully exhausted due to the retaliatory
transfers.  Johnson also alleges that, when he was designated to
a federal facility in Loretto, Pennsylvania, his requests for
grievance forms, postage stamps and copies were repeatedly
denied, despite his indigency.  Consequently, Johnson alleges
that he was unable to fully exhaust his administrative remedy
with regard to his challenge concerning the BOP's denial of five
months jail credit for time he served in the Lane County Jail in
Oregon.  It appears that Johnson may be alleging that he filed
grievances regarding his jail time credit while he was confined

4

at SPC[1] Sheridan in Oregon and in Loretto, PA, but these administrative remedies were either denied arbitrarily or not answered.  Johnson further alleges that he has not had any Unit Team meetings since he has been confined and he has not been allowed to contest his "improper" management variable from SPC Sheridan or his program review status errors.  Johnson asks that his custody status be returned to the level initially determined by the Designation Center in Grand Prairie, Texas, and all of his grievances be resolved by the Court.  (Id.).

In Ground Four of his petition, Johnson alleges that he was transferred from SPC Sheridan, Oregon to FCI Loretto, PA, with "deliberate indifference to [his] known ongoing serious medical needs and in violation of law with false transfer requests from non-medical corrections staff for retaliatory reasons and an abuse of discretion for exercising [his] constitutional rights in filing grievances, appeals, workers compensation claims in the present and prior incarceration."  (Pet., ¶ 7b, Ground Four). Johnson claims that the retaliation was in response to his assertion of "disability rights under the Social Security Act as a 100% totally disabled individual as determined by the Social Security Administration and Oregon's Senior and Disabled Services that have determined [Johnson] to be unemployable due to

---

[1]  The "SPC" designation refers to Satellite Prison Camp. See Prison Types & general Information page of the BOP website, at http://www.bop.gov/locations/institutions/index.jsp.

preexisting severe disabilities." (Id.).  Johnson also claims
that the BOP has "no authority or jurisdiction" to force him to
work and his forced employment in prison serves no penological
purpose for him.  He further alleges that false disciplinary
reports and retaliatory transfers were executed after Johnson
filed grievances about his disabilities preventing him from work.
(Id.).

In Ground Five, Johnson requests application of the Second
Chance Act for his early release and reentry programs and
services, especially with regard to his serious medical needs.
He alleges that his projected release date is February 2014,[2] and
by July 2012, he will have been confined for 19 months, with no
release or reentry plans having been made, in violation of BOP
policy.  (Pet., ¶ 7b, Ground Five).

In Ground Six, Johnson alleges that he suffered a work-
related injury at SPC Sheridan, Oregon and FCI Loretto, PA.  He
reported these incidents, together with the related issue that he
was being forced to work beyond his physical capability as he is
totally disabled, but his claims were never processed or
investigated by correctional or medical staff.  (Pet., ¶ 7b,
Ground Six).

---

[2]  In an attachment to his petition, Docket entry no. 1 at
page 52, a BOP Request for Transfer/Application of Management
Variable form, at ¶ 2, shows that Johnson has a projected release
date of March 22, 2014.

In Ground Seven, Johnson alleges that he was scheduled for
two spinal surgeries for his lower spine, radiology, cortisone
injections, and pain medication (including opiates and marijuana)
for severe chronic pain in his lower back and legs (sciatica).
He also was recommended for physical therapy by non-prison
medical providers for 103 hours per month to assist in daily
living activities.  Johnson alleges that the BOP has delayed,
denied or interfered with all of these recommended medical
treatments in violation of his Eighth Amendment right to be free
from cruel and unusual punishment.  Johnson also alleges that he
was to be confined to a medical detention center as recommended
by his sentencing judge in his federal criminal action in the
United States District Court for the District of Oregon, CR# 09-
60179-AA.  It appears that Johnson may have raised this claim in
a pending motion under 28 U.S.C. § 2255, in the District of
Oregon, Civil No. 11- 70017-AA.[3]  (Pet., ¶ 7b, Ground Seven).

---

[3]  This Court takes judicial notice of Johnson's federal
criminal proceeding and his civil proceedings under 28 U.S.C. §
2255, docketed in the United States District Court for the
District of Oregon, as 6:09-cr-60179-AA; 6:11-cv-70017-AA; and
6:12-cv-01038-AA.  Johnson filed a motion to vacate under § 2255,
along with numerous motions for relief, which were denied by
Opinion and Order dated October 24, 2012 at Docket entry no. 254
in Johnson's criminal matter, 6:09-cr-60179-AA.  The Court notes
that the judgment of conviction order, entered on December 6,
2010, in 6:09-cr-60179-AA at docket entry no. 67, ordered that
Johnson serve a term of imprisonment of 46 months, and
recommended Johnson to be assigned to "FCI Rockchester, MN."  A
review of the BOP web site for prison facilities shows only a
Federal Medical Center ("FMC") in Rochester, Minnesota.

In Ground Eight, Johnson alleges that, on or about June 16, 2011, during a retaliatory transfer, Johnson was assaulted at USP Canaan in Pennsylvania.  He alleges that he repeatedly requested investigation reports regarding the incident, and for all matters regarding Johnson since his incarceration in 2010, but has not received anything in response.  Johnson further alleges that his chronic care level has been raised to a level three and he is confined at FCI Fort Dix, which is a chronic care level two facility.  (Pet., ¶ 7b, Ground Eight).

In Ground Nine, Johnson reiterates that he has been transferred in retaliation for filing grievances.  He also repeats his claim that the BOP medical providers and correctional staff have failed to "reasonably respond to [his] serious medical needs."  (Pet., ¶ 7b, Ground Nine).  Johnson is seeking a transfer to a medical facility that can provide the appropriate medical care for his serious medical needs.  (<u>Id</u>.).

In Ground Ten, Johnson alleges that the SPC Sheridan Unit Team "mistakenly applied a management variable of greater security."  Johnson recites the many classes and programs he has successfully completed in prison, which should serve to reduce his custody classification level.  He also complains that he has not had a Unit Team meeting for more than a year.  Johnson asks to have his good conduct time restored for an incident that had occurred more than a year ago.  (Pet., ¶ 7b, Ground Ten).

8

Finally, Johnson alleges additional facts to support his petition.  On or about February 13, 2011, Cook Supervisor Shaw at SPC Sheridan forcefully removed Johnson's assigned walking cane and assaulted Johnson.  Johnson further alleges that Cook brought false disciplinary charges against Johnson and threatened Johnson with bodily harm because Johnson had filed a grievance against Cook for assault and for a prior sexual assault, as well as a worker compensation claim.  (Pet., pg. 9 at ¶ 1).

On September 14, 2011, Lt. Gardner at FCI Loretto, PA, allegedly made sexually abusive and profane remarks to Johnson. Johnson reported the harassing remarks but no investigation was conducted.  (Pet., pg. 9 at ¶ 2).  While Johnson was at FCI Loretto, Officer Adams allegedly "used excessive force upon [Johnson's] person and used sexually abusive language towards [Johnson] that was reported and investigated."  (Id., at ¶ 3). Johnson further alleges that Counselor Wirfel at FCI Loretto handcuffed Johnson behind his back and forced him to a Unit Disciplinary hearing by raising Johnson's arms above their limits.  A later Unit Disciplinary hearing was held on the false allegation that Johnson had refused to participate.  Johnson explains that he had not refused to participate, but rather was objecting to use of excessive force to bring him to the hearing. (Id., at ¶ 4).

9

Johnson next alleges that Warden Werlinger at FCI Loretto had removed bunk beds from cell areas to defeat an inspection conducted by the American Corrections Association.  Johnson alleges that FCI Loretto was designed to house 500 persons and that triple bunking had increased the inmate population to 1600 inmates.  In addition to the overcrowded conditions, Johnson alleges that his room had no outside ventilation.  (Id., at ¶ 5).

Johnson further alleges that he was forced to work beyond his physical capacity while confined at SPC Sheridan and FCI Loretto, in violation of his known disabilities.  (Id., at ¶ 6). He also complains tha he was denied care giver services while confined at SPC Sheridan and FCI Loretto.  (Pet., pg. 10 at ¶ 7).

Next, Johnson alleges that he has been denied postage stamps and copies, despite his indigent status, which has interfered with his access to the courts, and his administrative appeals from over 50 grievances he has filed since his incarceration. (Id., ¶ 8).  Johnson reiterates his denial of medical care claim, alleging that he has been transferred to non-medical facilities, his medical restrictions have been cancelled, and prescribed treatment has been delayed or denied.  (Id., at ¶ 9).

Johnson further alleges that he has reported job injuries and other injuries to correctional officers and medical providers at SPC Sheridan, USP Canaan and FCI Fort Dix, but these reports were not investigated.  (Pet., pg. 11 at ¶ 10).  While confined

at USP Canaan, Johnson alleges that he was sexually assaulted by another inmate, but the assault was not properly investigated after Johnson reported it.  He also complains that he has been denied appropriate psychological treatment after the sexual assault, and that his request for a transfer to a medical facility for treatment of his bleeding ulcer and post traumatic stress from the sexual assault was ignored.  (<u>Id</u>., at ¶ 11).

Next, Johnson alleges that, in less than one year of incarceration, his physical condition has deteriorated from walking with a cane to being confined to a wheelchair due to "rigid inflexible cruel and unusual conditions of confinement." Johnson further alleges that, although he is confined to a wheelchair, at FCI Fort Dix, he is housed in a building that is not wheelchair accessible, which deprives him of services, programs and activities of daily living.  (<u>Id</u>., at ¶ 12).

Johnson also alleges that, in disciplinary hearings, he has been denied copies of disciplinary charges, the opportunity to call witnesses and present documents, to be present at his hearings, to be advised of disciplinary decisions and to appeal the disciplinary decisions.  (<u>Id</u>., at ¶ 14).

Johnson next alleges that correction officers have fraudulently prepared transfer requests and inmate "in transit" documents with medical omissions to the Texas BOP Designation Center, bypassing the Medical Designation Center in Washington,

11

D.C.  Medical providers and correctional officers have failed to collect Johnson's medical records and forward them to the Washington, D.C. Medical Designation Center for a complete level of medical care assessment because Johnson's "PSI Report failed to include current orthopedic surgeon's medical reports and MRI and psychological evaluations."  (Pet., pg. 12 at ¶ 15).

Johnson also complains that his incoming legal mail has been opened outside of his presence repeatedly, and that delivery of his legal mail has been interrupted and delayed causing interference with his access to the courts and his appointed attorneys.  Johnson states that he has reported this mail abuse to prison officials, but no investigation has been conducted.  He asks that his legal mail be clearly labeled: "Special Mail - Open Only in Presence of Inmate."  (<u>Id</u>., at ¶ 16).

Johnson concludes his lengthy petition with a short synopsis paragraph as follows:

> I am 64 years of age with known disabilities and serious
> medical needs in chronic pain from sciatica serving a cruel
> and unusual sentence confined in a wheelchair in deliberate
> indifference to my serious medical needs that were being met
> prior to my incarceration.  The Federal Bureau of Prisons is
> triple bunked without medical services and programs with
> architectural barriers to the handicapped all in violation
> of policy, code, statute and case law by a rigid inflexible
> system resistant to positive changes that the courts place
> unwarranted faith in and allow bureaucratic abuse of
> discretion, fraud and waste.

(<u>Id</u>., at ¶ 17).  Johnson attaches about 60 pages of documents to his pleading, which includes medical reports, his November 2011

Program Review, and numerous inmate administrative remedy forms
(a few with responses).  (Pet. Attachments at Docket entry no. 1,
pages 14-75).

On May 8, 2012, the Court received a declaration filed by
Johnson in support of his petition for relief under the Second
Chance Act.  (Declaration, Docket entry no. 2).  In this
declaration, Johnson alleges that he is serving a 46-month prison
sentence for a December 1, 2010 conviction for being a felon in
possession of a firearm, which was entered in the United States
District Court for the District of Oregon.  (Declaration at ¶ 1).
Johnson states that he was transferred to FCI Fort Dix for
enrollment in the Residential Drug Abuse Program ("RDAP") due to
his opiate pain medication addiction.  He arrived on October 12,
2011, to find that the RDAP program, housing, services, and
classes are not wheelchair accessible at FCI Fort Dix.  Johnson
complains that no effort has been made by FCI Fort Dix
correctional officials to transfer him to wheelchair accessible
housing, or a drug rehabilitation facility or medical facility
since he was designated a chronic care level 3 inmate patient by
medical staff.  FCI Fort Dix is a chronic care level 2 facility.
(Decl., ¶ 2).

Johnson complains that he has requested enrollment and
participation in many release preparation programs, services and
classes at FCI Fort Dix, but has not been provided any

13

accommodation.   Johnson also appears to claim that he is less than 30 months from his projected release date, and no release preparation programs and program review has been conducted, contrary to federal law and regulations, and in violation of the Second Chance Act.  (Decl., ¶¶ 3-7).  Johnson alleges that this inaction by the FCI Fort Fix officials has prevented him from an award of up to one year in a pre-release Residential Reentry Center ("RRC") placement.  (Decl., ¶ 8, and Exhibit (P)-1 through 6).

## II.   <u>STANDARD OF REVIEW</u>

"Habeas corpus petitions must meet heightened pleading requirements."  <u>McFarland v. Scott</u>, 512 U.S. 849, 856 (1994).  Habeas Rule 2(c) requires a petition to "specify all the grounds for relief available to the petitioner," "state the facts supporting each ground," "state the relief requested," be printed, typewritten, or legibly handwritten, and be signed under penalty of perjury.  28 U.S.C. § 2254 Rule 2(c), applicable through Rule 1(b).

Habeas Rule 4 requires a judge to <u>sua sponte</u> dismiss a petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b).  Thus, "[f]ederal courts are authorized to dismiss summarily any habeas

14

petition that appears legally insufficient on its face."
McFarland, 512 U.S. at 856.  Dismissal without the filing of an
answer has been found warranted when "it appears on the face of
the petition that petitioner is not entitled to [habeas] relief."
Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490
U.S. 1025 (1989); see also McFarland, 512 U.S. at 856; United
States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)(habeas
petition may be dismissed where "none of the grounds alleged in
the petition would entitle [petitioner] to [habeas] relief"); see
also Mayle v. Felix, 545 U.S. 644, 655 (2005).

### III.  DISCUSSION

#### A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a
federal prisoner to challenge the "fact or duration" of his
confinement.  Preiser v. Rodriquez, 411 U.S. 475, 498–99 (1973),
including challenges to prison disciplinary proceedings that
affect the length of confinement, such as deprivation of good
time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards
v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson,
544 U.S. 74 (2005).  In addition, where a prisoner seeks a
"quantum change" in the level of custody, for example, where a
prisoner claims to be entitled to probation or bond or parole,
habeas is the appropriate form of action.  See, e.g., Graham v.
Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

See also Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 237 (3d Cir. 2005)(challenge to regulations limiting pre-release transfer to community corrections centers properly brought in habeas); Macia v. Williamson, 2007 WL 748663 (3d Cir. 2007) (finding habeas jurisdiction in challenge to disciplinary hearing that resulting in sanctions including loss of good-time credits, disciplinary segregation, and disciplinary transfer).

The Court of Appeals for the Third Circuit has held that habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence.  See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001)(noting that federal prisoners may challenge the denial of parole under § 2241); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990) (challenge to BOP refusal to consider prisoner's request that state prison be designated place for service of federal sentence).

The Court of Appeals has noted, however, that "the precise meaning of 'execution of the sentence' is hazy."  Woodall, 432 F.3d at 237.  Distinguishing Woodall, the Court of Appeals has held that a challenge to a garden-variety transfer is not cognizable in habeas.  See Ganim v. Federal Bureau of Prisons, 235 Fed. Appx. 882, 2007 WL 1539942 (3d Cir. 2007).  See also McCall v. Ebbert, 2010 WL 2500376 (3d Cir. Jun. 21, 2010)(District Court properly dismissed for lack of jurisdiction

16

§ 2241 petition challenging transfer to increased security level
and conditions of confinement); <u>Zapata v. United States</u>, 264 Fed.
Appx. 242 (3d Cir. 2008)(District Court lacks jurisdiction under
§ 2241 to entertain inmate's challenge to prison transfer);
<u>Bronson v. Demming</u>, 56 Fed. Appx. 551, 553–54 (3d Cir.
2002)(habeas relief is unavailable to inmate seeking release from
disciplinary segregation to general population, and district
court properly dismissed habeas petition without prejudice to any
right to assert claims in properly filed civil complaint).

    Recently, in <u>Cardona v. Bledsoe</u>, 681 F.3d 533 (3d Cir.
2012), a federal inmate petitioned for habeas relief under
§ 2241, arguing that the BOP illegally referred him to the
Special Management Unit as punishment for filing lawsuits against
the Bureau.  The district court dismissed the petition for lack
of jurisdiction under § 2241.  The Third Circuit noted that,
although § 2241 extends jurisdiction to claims concerning the
execution of a federal inmate's sentence, "[i]n order to
challenge the execution of his sentence under § 2241, Cardona
would need to allege that BOP's conduct was somehow inconsistent
with a command or recommendation in the sentencing judgment."
<u>Id</u>. at 537.  The Third Circuit held that, because Cardona's
petition did not allege that the "BOP's conduct was inconsistent
with any express command or recommendation in his sentencing
judgment," Cardona's petition did not challenge the execution of

his sentence and the district court lacked jurisdiction under §
2241.  Id.

        Likewise, challenges to conditions of confinement are not
cognizable in a habeas action.  The Court of Appeals for the
Third Circuit has explained that:

> whenever the challenge ultimately attacks the "core of
> habeas"—the validity of the continued conviction or the fact
> or length of the sentence—a challenge, however denominated
> and regardless of the relief sought, must be brought by way
> of a habeas corpus petition.  Conversely, when the challenge
> is to a condition of confinement such that a finding in
> plaintiff's favor would not alter his sentence or undo his
> conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).  See also
Bonadonna v. United States, 446 Fed. Appx. 407 (3d Cir. 2011)
(District Court properly dismissed § 2241 petition where
petitioner's allegations of deficient or different medical care
does not "spell speedier release," and thus does not lie at the
"core of habeas corpus.")(citations omitted); McGee v. Martinez,
627 F.3d 933, 936 (3d Cir. 2010)("the fact that a civil rights
claim is filed by a prisoner rather than by an unincarcerated
individual does not turn a § 1983 case or a Bivens action into a
habeas petition").

        In this case, Johnson asserts numerous claims that concern
the conditions of his confinement rather than the fact or
duration of his confinement.  He alleges claims of denial of
medical care, retaliatory transfers and disciplinary actions,
denial of access to the courts (via denial of postage stamps,

etc.) and interference with his legal mail.  Johnson also claims
that he is forced to work despite his total disability, is denied
care giver services and wheelchair accessible housing and
services.  He seeks a transfer to a prison medical facility that
can accommodate his level 2 chronic care assessment.  These
claims were raised by Johnson in an earlier action, Civil No. 11-
6754 (RMB), which was administratively terminated for his failure
to either pay the filing fee or submit a complete application to
proceed in forma pauperis ("IFP").[4]  In addition, Johnson alleges
claims of overcrowded conditions, sexual harassment, failure to
protect (from the harm of another inmate), and use of excessive
force in violation of his Eighth Amendment right against cruel
and unusual punishment.  He also alleges work-related injuries,
classification or custody status issues, and denial of
disciplinary due process claims.   All of these claims involve
issues related to the conditions of his confinement, and are not
properly asserted in this § 2241 action, as they would not alter
his sentence or undo his conviction.  Therefore, these claims
must be dismissed for lack of jurisdiction under § 2241.  Johnson
is free to raise these claims in a civil complaint filed under
Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388, 389 (1971), or in an action under the

---

[4]  This Court notes that Johnson's earlier action, Civil No.
11-6754 (RMB), was also filed as a petition for habeas relief,
and is likewise subject to dismissal for lack of jurisdiction.

Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202.  As Johnson
has raised most of these claims in his earlier action, Civil No.
11-6754 (RMB), it may be more appropriate for him to bring these
similar claims and his additional, related civil rights claims
asserted in the instant case, altogether in one civil complaint.[5]

B.  Habeas Claims

     Turning next to the asserted claims that may sound in § 2241
habeas petition, Johnson challenges the BOP decision to deny him
five months jail credit, the failure of the BOP to assess his
pre-release RRC placement as mandated under the Second Chance
Act, and the BOP's disciplinary sanction resulting in the loss of
good conduct time.  Because these claims affect the duration of

_____

     [5]  The filing fee for a habeas petition is $5.00, and
inmates filing a habeas petition who are granted in forma
pauperis status do not have to pay the filing fee.  See Santana
v. United States, 98 F.3d 752 (3d Cir. 1996)(filing fee payment
requirements of Prison Litigation Reform Act do not apply to in
forma pauperis habeas corpus petitions and appeals).  In
contrast, the filing fee for a Bivens complaint is $350.00.
Inmates filing a Bivens complaint who proceed in forma pauperis
are required to pay the entire filing fee in monthly
installments, which are deducted from the prison account.  See 29
U.S.C. § 1915(b).  In addition, if a prisoner has, on three or
more occasions while incarcerated, brought an action or appeal in
a federal court that was dismissed as frivolous or malicious, for
failure to state a claim upon which relief may be granted, or
because it seeks monetary relief from immune defendants, then the
prisoner may not bring another action in forma pauperis unless he
or she is in imminent danger of serious physical injury.  See 28
U.S.C. § 1915(g).  Because of these differences, this Court will
not sua sponte recharacterize the pleading as a civil complaint.
If Johnson chooses to bring a civil complaint, he may do so by
filing a complaint in a new docket number.

Johnson's confinement, they are cognizable under § 2241, pursuant to <u>Preiser</u>, 411 U.S. at 498-99; <u>Woodall</u>, 432 F.3d at 237; <u>Barden</u>, 921 F.2d at 478-79.  <u>See</u> <u>also</u> <u>Wilkinson</u>, 544 U.S. 74; <u>Macia</u>, 2007 WL 748663.  Therefore, these claims will be allowed to proceed at this time since Johnson has submitted a complete IFP application and qualifies for indigent status.  Accordingly, the Court will direct that the respondent Warden answer the petition and provide the relevant administrative record regarding Johnson's remaining habeas claims.[6]

## CONCLUSION

Based on the foregoing, the Court dismisses Johnson's claims asserting numerous violations of his federal constitutional rights regarding the conditions of his confinement that do not challenge the fact or duration of his confinement, without prejudice to any right he may have to assert these claims in a separate properly filed civil complaint.  However, the remaining habeas claims in this petition will be allowed to proceed at this time, and the Court will direct the respondents to provide an answer with the relevant record within the time prescribed by the

---

[6]  The Court notes that Johnson does not specifically identify the disciplinary actions that resulted in the loss of good conduct time.  Nevertheless, given the short period of incarceration at the time he filed his petition (Johnson was imprisoned for about 18 months), it is likely that respondent is aware of the disciplinary action at issue and can provide the relevant record accordingly.

Rules of the Court.  An appropriate Order accompanies this

Opinion.

                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              United States District Judge

Dated: November 20, 2012